**Duane SWITZER, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 82–2903.**

United States Court of Appeals, Seventh Circuit.

Submitted May 3, 1984.[*]

Decided Aug. 24, 1984.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Floyd A. Ramsier, Fort Wayne, Ind., Paul R. Mancuso, Barkan & Neff, Co., L.P.A., Columbus, Ohio, for plaintiff-appellant.

Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., Steven J. Plotkin, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff Duane Switzer appeals from the district court's affirmance of a decision by the Social Security Administration to terminate his social security disability benefits. We reverse.

Plaintiff suffers from lung abscesses and bronchitis and has been diagnosed as having chronic obstructive pulmonary disease. He applied for disability insurance benefits on May 28, 1974, and was awarded benefits as of December 1973. The Social Security Administration terminated plaintiff's benefits effective November 1975 as a result of a continuing disability investigation. In December 1977, however, on review of that action, an Administrative Law Judge ("ALJ") found that plaintiff's disability had been continuous from 1973 and ordered that his benefits be reinstated. Later, the Social Security Administration again investigated plaintiff's disability and terminated his benefits, effective April 1980. Plaintiff requested reconsideration and also applied for supplemental security income benefits. A formal hearing was held before another ALJ, who affirmed the termination in a written opinion dated October 6, 1981. This second ALJ found that plaintiff's condition had improved, that plaintiff no longer had a severe impairment, and that plaintiff could return to his former job as a furniture salesman (although he would occasionally be required to aid in lifting up to 300 pounds). The ALJ's decision became the final decision of the Secretary when the Appeals Council denied review. Plaintiff then brought this action for judicial review.

This case involves termination of benefits and is therefore governed by the standards set out in *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981). In *Cassiday,* we held that "once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed," 663 F.2d at 747 (quoting *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996, 998 (1st Cir.1975)). The Secretary's brief essentially treats this appeal as a review of a denial of an initial application for benefits and makes no reference to *Cassiday,* although plaintiff argues that the case is controlling.[1] The Secretary does, however, con-

---

1. We note that the Secretary had announced in Social Security Ruling 82–49c that she did not "acquiesce" in and would not follow the holding of *Patti v. Schweiker,* 669 F.2d 582, 587 (9th Cir.1982), which requires the Secretary to come forward with evidence that a recipient's medical condition has improved before terminating benefits. Subsequently, the Ninth Circuit affirmed a district court injunction ordering the Secretary to restore benefits to a class consisting of

clude with the contention that "substantial evidence [supports the finding that] plaintiff's condition has improved to the point where he is able to resume his past relevant work."[2] We must, of course, uphold a decision of the Secretary that is supported by substantial evidence in the record as a whole, unless there has been an error of law. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). However, in this case we find that we are unable to affirm the decision of the Secretary even under this lenient standard of judicial review.

In concluding that plaintiff's condition had improved, the ALJ who terminated plaintiff's benefits relied primarily on a reviewing physician's report, dated May 28, 1980, that states, "Current spirometric studies show that the claimant is not signif-

icantly restricted in his breathing capacity." The only clinical data cited in support of this conclusion is a pulmonary function study conducted on April 18, 1980. This study produced the following results shown as percentages of predicted normal values:[3]

| | |
|---|---|
| $FEV_1$ | 51 percent |
| $FEV_3$ | 77 percent |
| MVV | 86 percent |
| Vital Capacity | 84 percent |

An increase in these percentages over time would indicate an improvement in plaintiff's condition. But the percentages obtained in the 1980 tests had in fact decreased compared to the percentages obtained in tests relied on by the 1977 ALJ, who found that plaintiff's disability had remained continuous since his initial application for benefits. The results of those earlier tests are shown below, as they were in the record, as percentages of the volumes predicted for a healthy person:

former social security recipients in the Ninth Circuit who were terminated without evidence that their conditions had improved. *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984). Because the Secretary has made some effort, albeit minimal, to justify her decision under the standard set forth in *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981), we will not comment on her non-acquiescence policy. However, we remind counsel for the Secretary that they have professional obligations as officers of this court and may not, in presenting their position, simply ignore circuit precedent with which they or their client disagree.

2. In terminating benefits, the ALJ acknowledged the existence of plaintiff's earlier disability but found that it had ceased. The Secretary does not argue that plaintiff's condition was not as serious as was at first supposed.

3. Pulmonary function tests are designed to provide an objective measurement of pulmonary disability. 9 *Am.Jur. Proof of Facts* 649 (1961). FEV stands for "forced expiratory volume." It is the volume of air that a person can breathe out during a fixed time period after taking a deep breath and blowing as hard as possible. D. Morton, *Medical Proof of Social Security Disability* § 2.4 at 79 (1983). $FEV_1$ and $FEV_3$ represent the volumes of air exhaled in one second and three seconds, respectively. 5A *Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialities* § 33.-63d at 90 (1972).

MVV is an abbreviation for "Maximum Voluntary Ventilation," and refers to the maximum amount of air that a person can breath in and out of the lungs in one minute. D. Morton, *supra*, at 78–79.

Vital Capacity refers to the total volume of air exhaled in one expiration after the patient is asked to inhale as fully as possible and exhale as completely as possible. 9 *Proof of Facts*, *supra*, at 653.

Normal values for each of these measures can be determined based on a patient's age, height, weight and sex. 5A *Lawyers' Medical Cyclopedia, supra*, at 89–90; 9 *Proof of Facts, supra*, at 653. The numbers reported above in the text are the actual volumes measured in pulmonary function studies on plaintiff, divided by the volumes predicted for a healthy person with plaintiff's physical characteristics, multiplied by 100. Plaintiff took pulmonary function tests both before and after the administration of a bronchodilator, a chemical agent that makes the bronchial tubes leading to the lungs open wider. *See discussion*, D. Morton, *supra*, § 2.4 at 79. In reporting the 1975 results, we have chosen the best values with or without the bronchodilator. In his decision in the instant appeal the ALJ relied on the 1980 study, which does not indicate whether a bronchodilator was administered. An earlier study indicated that a bronchodilator had a very minimal effect on plaintiff.

| | |
|---|---|
| FEV$_1$ | 61 percent |
| FEV$_3$ | 83 percent |
| MVV | 103 percent |
| Vital Capacity | 103 percent |

Thus, the 1980 pulmonary function study cited by the reviewing physician provides no support for the Secretary's contention that plaintiff's condition had improved.[4]

■ There are additional difficulties with the ALJ's reliance on the report that plaintiff's breathing capacity was not significantly restricted. First, the report is of uncertain origin and is initialed by a reviewing physician identified only as "J.R.".[5] Second, there is no evidence that "J.R." ever examined plaintiff. In contrast, one of plaintiff's treating physicians, Dr. Sorg, concluded that the 1980 pulmonary function tests "indicate severe restrictive changes with obstructive changes and severe diffusion defect."[6] Dr. Sorg further reported that he expected no significant improvement in plaintiff's condition. Another physician, Dr. Fouts, who treated plaintiff in June 1981, determined that plaintiff suffered from "[c]hronic air flow obstruction—moderately severe clinically" and wrote in August 1981 that "Mr. Switzer has been more symptomatic and unable to continue a normal life style." The determinations by both treating physicians that plaintiff continued to suffer from severe obstructive and diffusion defects were supported by specific laboratory and clinical findings. *See* 20 C.F.R. § 404.1526. Indeed, the reviewing physician and Dr. Sorg based their conclusions on the same test measurements, which were unchallenged and indicated a deteriorating condition when compared with the earlier tests.[7] The ALJ made no finding discounting either Dr. Sorg's or Dr. Fouts' credibility. *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982). We conclude that the reviewing physician's report that plaintiff's breathing was not significantly restricted does not provide substantial evidence of improvement in the face of contrary reports by two treating physicians that plaintiff's condition had remained severe. *See Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980); *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.1977).

■ In support of her position that plaintiff no longer had a severe impairment, the Secretary cites a report by Dr. Sorg, not mentioned by the ALJ, that indicates that plaintiff could lift up to 20 pounds maximum. However, the Secretary totally ignores the very next line of the doctor's report, which states that plaintiff could not lift even 5 pounds frequently (defined as up to 10 times in an eight-hour day) and could do extended walking or standing for *zero* hours. This report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while

---

4. The ALJ also quoted from an x-ray evaluation in September 1980 which states that plaintiff's lungs are "free of active disease compared to our last examination." We do not believe that this supports the ALJ's finding. A suggestion that plaintiff's condition had not gotten worse does not support a finding that it has gotten better. The report also states "Impression: chronic obstructive lung disease."

5. It is uncertain who wrote this report because it also states that "due process was afforded." This is not ordinarily considered to be a medical determination.

6. A change is defined in pathology as a "structural alteration of which the cause and significance is uncertain." W. Dornett, *Illustrated Stedman's Medical Dictionary*, 258 (5th unabridged lawyer's ed. 1982). Diffusion refers to the transfer of oxygen and carbon dioxide across the thin membrane separating blood and air in the lungs. 5A *Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialities* § 33.63d at 89 (1972).

7. Dr. Fouts relied on an August 1981 pulmonary function study, submitted after plaintiff's hearing, but before the second ALJ rendered his decision. This study produced the following results (shown as a percentage of normal):

| | |
|---|---|
| FEV$_1$ | 39 percent |
| FEV$_3$ | 94 percent |
| MVV | 64 percent |
| Vital Capacity | 69 percent |

The person conducting the test noted that plaintiff showed good effort. After exerting himself on this test, plaintiff reportedly coughed up a moderate amount of thick yellow mucus.

ignoring other parts, is improper. *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir.1984); *Zblewski v. Schweiker*, 732 F.2d 75, 78–79 (7th Cir.1984).

We conclude that the Secretary has not met her burden of showing by substantial evidence on the record as a whole that plaintiff's condition had improved since he was granted benefits. We therefore reverse the judgment of the district court and direct the Secretary to reinstate plaintiff's benefits that were wrongfully terminated. *See Cassiday v. Schweiker*, 663 F.2d 745, 750 (7th Cir.1981); 42 U.S.C. § 405(g). *See also Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir.1983). We further remand plaintiff's application for benefits under the supplemental security income program to the Secretary to determine whether, in light of this opinion, plaintiff satisfies the other statutory requirements for those benefits.