Marvin E. **SOPER**, Plaintiff-Appellant,

v.

Margaret **HECKLER**, Secretary of Health & Human Services, Defendant-Appellee.

No. 83–2625.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 4, 1985.[*]

Decided Feb. 4, 1985.

how these cases have any bearing on this matter and will not address them.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Marsha J. Caporaso, Dundee, Ill., for plaintiff-appellant.

Jeffrey M. Teske, Dept. Health & Human Services, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This case requires the court to determine the effect of the Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794 (1984), which was signed into law on October 9, 1984, on certain cases currently awaiting review in the federal courts. At issue are decisions by the Secretary that a previously-qualified recipient of disability benefits has ceased to be disabled and that benefits are to be terminated. In the case before us the district court upheld the Secretary's decision to terminate benefits, but, for the reasons set forth below, we vacate and remand for further proceedings.

Plaintiff Marvin Soper applied for disability benefits under the Social Security Act, 42 U.S.C. § 401 *et seq.*, in August 1978. In May 1979, after an initial unfavorable decision and a subsequent hearing before an Administrative Law Judge (ALJ), he was found to have been disabled since July 5, 1977 as the result of a back injury. Benefits were awarded retroactively, and regular payments were begun. In May 1980, Soper was notified that the Social Security Administration (SSA) would be conducting a review of his case to determine if he were still disabled. In October, he was notified that the SSA had determined he had become able to do substantial gainful work in February 1980; he was also informed that he was entitled to benefit payments only through April 1980 (to provide for a three-month period of adjustment) and that his last check would be the one he had received for the month of September. Later, Soper was notified that because he had been overpaid, he owed SSA in excess of $3,000.

Soper continued, and continues, to assert that he is still disabled; that he has had little if any improvement; and that his treating physician has stated unequivocally that he must not return to work. He filed for reconsideration and, when that was denied, requested a hearing before an ALJ. The decision of the ALJ, issued in March 1982, stated that Soper was capable of performing sedentary work and that he had stopped being disabled in February 1980. The ALJ also determined that Soper was "at fault" for the overpayment, which now amounted to over $4,000 for unexplained reasons, and would be required to repay that amount. The Appeals Council denied his request for reconsideration of that decision but did forgive his indebtedness due to a new SSA policy that recipients would not be held liable for overpayments they received prior to being informed that they had been terminated. Soper instituted a civil action in federal district court, and the court upheld the SSA decision as being supported by substantial evidence. That ruling is now before us on appeal.

The Social Security Disability Benefits Reform Act of 1984 (Reform Act) addresses a number of issues that have been of considerable concern in recent years in the

administration of disability benefits. In addition to setting new standards and procedures for the termination of benefits, the Reform Act also makes changes in the following areas: evaluation of pain, evaluation of multiple impairments, standards for determining mental impairments, consultative examinations, cost of rehabilitation services, and the need for uniform standards. Of particular importance in this case are the procedures included to allow for the changes in the standard for termination decisions.

Under prior law, the standard for qualifying new applicants and disqualifying previously-approved recipients was the same. An individual could receive disability benefits only if he or she was unable, because of a medically determinable impairment expected to last at least 12 months or to end in death, to perform any substantial gainful activity that exists in the national economy, with consideration given to that person's age, education and work experience. 42 U.S.C. § 423(d). This court's standard on review has been somewhat at variance with the statutory definition since our decision in *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981). In *Cassiday*, we held that

> once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify doing so. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed.

*Id.* at 747. We recently restated this position in *Switzer v. Heckler*, 742 F.2d 382 (7th Cir.1984). In *Switzer*, we noted both the awkwardness of dealing with SSA evaluations that treated termination cases as

initial applications, *id.* at 383, and the fact that at least one other circuit required a showing of medical improvement, *id.* at 383 n. 1 (citing to *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir.1982)). *See also, Rush v. Secretary of Health and Human Services*, 738 F.2d 909, 915–16 (8th Cir.1984); *Haynes v. Secretary of Health & Human Services*, 734 F.2d 284, 288 (6th Cir.1984).

The Reform Act alters the standard by which disability termination decisions are made by the SSA. A decision to terminate benefits must now be supported by substantial evidence that:

1) there has been a medical improvement and the individual is now able to engage in substantial gainful activity;

2) new medical evidence and a new assessment of the individual's residual functioning capacity demonstrate that he or she is the recipient of advances in medical or vocational therapy or technology and is able to engage in substantial gainful activity;

3) new or improved diagnostic techniques establish that the individual's condition is not as disabling as initially considered; or

4) the prior determination was in error.[1]

■ Other provisions of the Reform Act set out the cases to which this new standard is to be applied. These include (a) cases decided after the date of the Act (October 6, 1984); (b) cases on which there had been no final administrative decision by that date; (c) cases in which there was a pending request for judicial review on September 19, 1984 (date of the Act's passage in Congress); and (d) cases where a request for review was made after September 19th, if the decision of the Secretary was made within 60 days of October 6th. Reform Act § 2(d)(2)(A)–(D). Cases "relating to medical improvement"[2] in the latter

---

1. Determination, under this new standard will be made on the basis of the weight of all the evidence in the case file and in a "neutral" manner, with no initial inference as to the presence or absence of disability. Reform Act § 2(a). Regulations promulgated by the Secretary will further outline the responsibilities of

the parties in the production of evidence. *See* H.R.Conf.Rep. No. 98–1039, 98th Cong., 2d Sess. 26 *reprinted in* 1984 U.S.Code Cong. & Ad.News 3038, 3080, 3084.

2. An "action relating to medical improvement" means an action raising the issue of whether a disability termination decision should not have

two groups, those involving requests for judicial review, shall be remanded to the Secretary for review under the new standard. *Id.* We read this direction for remand to be mandatory, and the other circuits discussing the provision have done so as well. *Harmon v. Secretary of Health and Human Services,* 749 F.2d 357 (6th Cir.1984); *Steele v. Heckler,* 748 F.2d 492 (8th Cir.1984); *Jackson v. Heckler,* 745 F.2d 1326 (10th Cir.1984).

One other part of the Reform Act is worth noting in connection with this case. As the facts outlined above illustrate, the previous method of conducting termination decisions and their reviews could impose substantial financial hardship on a recipient who, like Soper, might start out with a large amount paid retroactively, suddenly find himself without regular payments and with a substantial debt, and then have to pay for medical examinations and possibly attorney fees in order to contest the decision. (At one point over half of the individuals appealing had gone through all this while still disabled, as their benefits were later reinstated. *Heckler v. Day,* —— U.S. ——, 104 S.Ct. 2249, 2262, 81 L.Ed.2d 88 (1984) (Marshall, J., dissenting) (quoting from S.Rep. 97–648, 97th Cong., 2d Sess. (1982) *reprinted in* 1982 U.S. Code Cong. & Ad.News 4373, 4378).) The Reform Act addresses this problem in ways that will benefit individuals in this situation.

■ An individual whose case is remanded pursuant to section 2(d)(2)(C) or (D) of the Reform Act may elect to have benefit payments made beginning with the month of his election and continuing at least until an initial redetermination is made by the Secretary. Reform Act § 2(e). In addition, if the individual is found to be under a disability after the Secretary's review, ret-

roactive benefits will be paid beginning with the first month to which the most recent termination applied. Reform Act § 2(f). The election procedure is contained in 42 U.S.C. §§ 423(g) (as amended Jan. 12, 1983 & Oct. 6, 1984). If the new determination is unfavorable, the amounts paid out will be considered overpayments, but repayment may be waived if the appeal was taken in good faith.

Because the Reform Act directs that this case be remanded for a new determination under the revised standard for termination decisions, the judgment of the district court and the administrative termination of disability benefits are vacated, and the case is remanded to the district court with instructions to remand to the Secretary for review pursuant to the Reform Act.

VACATED AND REMANDED

---

been made on consideration of whether there had been medical improvement since the time of the earlier determination. Reform Act § 2(d)(6). Since the standard in this circuit has been one requiring evidence of medical improvement (or its equivalent) since 1981, almost all requests contesting termination decisions in this circuit will meet this definition.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively

concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.