Anton L. HENDRICKS,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant–Appellee.

No. 87–1285.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 6, 1987.

Decided May 25, 1988.

Victor Schwartz, King Street Alternative Law Office, Inc., Madison, Wis., for plaintiff-appellant.

Ted K. Yasuda, Office of General Counsel, Dept. of Health and Human Service, Chicago, Ill., for defendant-appellee.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Anton Hendricks appeals from the judgment of the district court denying his petition for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). We affirm the judgment of the district court.

## I

### Facts

We need not review the specifics of Mr. Hendricks' underlying case; a brief restatement of the procedural posture will suffice. Mr. Hendricks applied for disability benefits and supplemental security income benefits in December 1980 and June 1981. After an initial denial of benefits, an administrative law judge (ALJ) granted Mr. Hendricks' claim on February 25, 1982, retroactive to May 1980. In January 1983, however, Mr. Hendricks received a notice from the Secretary of Health and Human Services (Secretary). This notice informed him that more current medical evidence showed that he was capable of performing substantial gainful activity and that he could not be considered disabled. The Secretary did not allege, however, that Mr. Hendricks' medical condition had improved. The Secretary terminated Mr. Hendricks' benefits, effective March 1983. Mr. Hendricks challenged the Secretary's action revoking his benefits. In a decision dated June 28, 1983, an ALJ rejected Mr. Hendricks' contention. The Appeals Council then denied review of the ALJ's decision. That decision therefore became the final action of the Secretary.

On September 23, 1983, Mr. Hendricks sought review of the Secretary's decision in district court. While his case was pending before that court, the Social Security Dis-

ability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (Act or Reform Act) was enacted. The Reform Act mandated that all actions seeking judicial review of termination decisions relating to "medical improvement" pending on or before September 19, 1984, should be remanded to the Secretary for reconsideration in accordance with the new standards set forth in the Act. Pursuant to this requirement, a magistrate remanded Mr. Hendricks' claim to the Secretary. On review, the Secretary, applying the new standards, determined that Mr. Hendricks' disability benefits should be reinstated.

Mr. Hendricks then timely filed a petition for attorneys' fees pursuant to the EAJA. He claimed that he had been a prevailing party in his litigation with the Secretary. The district court denied this petition for two reasons. First, the court found that "it would be a strange construction of the Equal Access to Justice Act to hold that a remand pursuant to legislative mandate could be said to make the plaintiff the 'prevailing party' as required by the EAJA." *Hendricks v. Bowen,* No. 83–C–851–C, order at 2 (W.D.Wis. Dec. 22, 1986) [available on WESTLAW, 1986 WL 15782]. Second, the court noted that, under the EAJA, attorneys' fees are awarded only when the government's position was not substantially justified. Because the intervening legislative action precluded its consideration of the merits of the underlying case, the court concluded that it could not determine whether the government's position failed under this standard. Nor could it determine, added the court, whether other circumstances existed which would make an award of attorneys' fees unjust. *Id.* This appeal followed.[1]

## II

### Discussion

The EAJA provides in pertinent part:

Except as otherwise specifically provided by statute, a court shall award to a

---

1. The district judge that rejected Mr. Hendricks' claim in this case recently reached the opposite result in a different case, commenting that her decision here had been "wrong." *Whiting v. Bowen,* 671 F.Supp. 1219, 1222 (W.D.Wis.1987).

prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under the statute, Mr. Hendricks is entitled to attorneys' fees if three prerequisites are met. First, Mr. Hendricks must be a prevailing party. Second, the position of the government must not have been substantially justified. Third, Mr. Hendricks' case must not involve special circumstances that would make an award of fees unjust. *See Gamber v. Bowen*, 823 F.2d 242, 244 (8th Cir. 1987).

### A. *Substantially Justified*

We first consider whether the position of the Secretary in the underlying litigation was substantially justified. Mr. Hendricks argues that the Secretary's position before the district court was not justified because of this court's decision in *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981). In *Cassiday*, we held that the Secretary normally could not terminate disability benefits absent a finding that the claimant had " 'improved to the point of being able to engage in substantial gainful activity.' " *Id.* at 747 (quoting *Miranda v. Secretary of Health, Educ. and Welfare*, 514 F.2d 996, 998 (1st Cir.1975)). However, we also said that the Secretary might be justified in terminating benefits when the " 'claimant's condition is not as serious as was at first supposed.' " *Id.* (quoting *Miranda*, 514 F.2d at 998). Mr. Hendricks contends that *Cassiday* established a standard comparable to the standard adopted by Congress in the Reform Act and that, therefore, the

Secretary was not substantially justified in contesting Mr. Hendricks' continued right to benefits.

Contrary to the assertion of Mr. Hendricks, the decision in *Cassiday* does not establish that the government was not substantially justified in revoking Mr. Hendricks' benefits. *Cassiday* did not preclude the possibility of the Secretary's revoking benefits even when there was no "medical improvement." Under *Cassiday*, the Secretary also could revoke disability benefits when later investigation revealed that the original grant of those benefits was mistaken. Indeed, between the time when *Cassiday* was decided and Congress passed the Reform Act, several district courts in this circuit affirmed decisions by the Secretary to terminate benefits even though no medical improvement had been shown. Although those decisions later were reversed by this court, see *Switzer v. Heckler*, 742 F.2d 382 (7th Cir.1984) and *Soper v. Heckler*, 754 F.2d 222 (7th Cir.1985), the analyses of the district courts nonetheless evidence a common understanding, at the time that Mr. Hendricks' litigation was pending before the district court,[2] that *Cassiday* did not unequivocally require the Secretary to prove "medical improvement" in order to terminate benefits.

In light of the limited holding in *Cassiday*, a strong argument can be made that the Secretary's position in this litigation was substantially justified. The record contains a significant amount of evidence suggesting that Mr. Hendricks could engage in "substantial gainful activity." *See* 42 U.S.C. § 423(d)(1)(A). However, we need not ground our decision solely on this point because, as we discuss below, Mr. Hendricks cannot be deemed a prevailing party for purposes of the EAJA.

### B. *Prevailing Party*

To be considered a prevailing party, it is not enough that Mr. Hendricks' suit was remanded to the Secretary. *Singleton v.*

---

**2.** This court reversed the district court in *Switzer* on August 24, 1984. Mr. Hendricks filed his action in September 1983, and the parties filed their motions for summary judgment in June 1984. Thus, the Secretary's litigating posture in this case was fully articulated before *Switzer* was decided.

*Bowen,* 841 F.2d 710, 711 (7th Cir.1988). Mr. Hendricks also must show that he eventually resecured his disability benefits and that his lawsuit played a "provocative role" in securing that result. *Lovell v. City of Kankakee,* 783 F.2d 95, 97 (7th Cir.1986).[3] In *Lovell,* we said that " 'plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained.' " *Id.* at 96 (quoting *Harrington v. DeVito,* 656 F.2d 264, 266 (7th Cir.1981)). Other circuits also have said that the plaintiff must establish that his lawsuit was a "catalyst" for the favorable disposition. *See, e.g., Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985) (en banc); *Williams v. Miller,* 620 F.2d 199, 202 (8th Cir.1980) (per curiam).

The issue presented in this case, whether a disability claimant can be deemed a prevailing party when the Secretary has reinstated benefits pursuant to reconsideration mandated by the Reform Act, was squarely addressed recently in *Truax v. Bowen,* 842 F.2d 995 (8th Cir.1988) (per curiam). In *Truax,* the court concluded that an individual disability claimant could not be deemed the catalyst or the cause of Congress' decision to enact the Reform Act. The court said:

> [E]ven granting that Congress' enactment of the Reform Act was partly a result of the thousands of suits filed by terminated claimants against the Secretary, see *Stone v. Heckler,* 658 F.Supp. 670, 674–75 (S.D.Ill.1987), we believe that the causal link between Truax's individual lawsuit and Congress's action is too

tenuous to satisfy the catalyst test. Moreover, although it is true that had Truax not filed his lawsuit he would not have obtained relief, we fail to see how this "but for" argument establishes a causal connection between the litigation and the Secretary's remedial action.

*Id.* at 997. We agree with that analysis.[4] The nexus between Congress' action and Mr. Hendricks' suit is too attenuated to conclude that the latter played a "provocative role" in causing the former. The Secretary did not reinstate Mr. Hendricks' benefits because the Secretary wanted to compromise a dispute or because he became convinced that his prior position was unprincipled. Rather, the Secretary reinstated Mr. Hendricks' benefits because Congress mandated reconsideration of all such currently pending claims under a newly enacted standard.[5] Admittedly, as the court noted in *Truax,* claimants like Mr. Hendricks would not have been entitled to disability benefits if they had not pursued fully their legal remedies. But only in a hypertechnical sense does this make Mr. Hendricks' lawsuit the "cause" of his victory. The proximate cause of his victory was the congressional enactment of a standard under which he was entitled to relief. We simply do not believe that Congress envisioned the "prevailing party" language in the EAJA to be so broad as to encompass the instant circumstance.

Our review of the legislative history of the Reform Act also makes us reluctant to infer that Congress intended claimants like

---

**3.** *Lovell* involved the definition of a prevailing party under 42 U.S.C. § 1988. Regardless of the statutory basis, the standards for defining a prevailing party are the same. *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *see also Truax v. Bowen,* 842 F.2d 995, 997 n. 2 (8th Cir.1988) (per curiam).

**4.** The result and analysis in *Truax* had been adopted previously by several district courts in this circuit. *See, e.g., Vokurka v. Bowen,* No. 85–C–4554 (N.D.Ill. Aug. 5, 1987) [available on WESTLAW, 1987 WL 15397]; *Kawohl v. Bowen,* No. 84–C–1628 (N.D.Ill. May 15, 1987) [available on WESTLAW, 1987 WL 11368]; *Bogacz v. Bowen,* No. 84–C–2284 (N.D.Ill. May 2, 1987) [available on WESTLAW, 1987 WL 11434]; *Mathus v.*

*Heckler,* 661 F.Supp. 241 (N.D.Ill.1987); *Krause v. Heckler,* No. 84–C–3322 (N.D.Ill. Jan. 9, 1987). *Contra Whiting v. Bowen,* 671 F.Supp. 1219 (W.D.Wis.1987).

**5.** The legislative history of the Reform Act suggests that the primary purpose of the Reform Act was to ensure that disability claimants were treated uniformly across the United States. *See* H.R.Rep. No. 618, 98th Cong., 2d Sess. 9–13, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3038, 3046–50; S.Rep. No. 466, 98th Cong., 2d Sess. 9 (1984). Prior to the Reform Act, there was no statutory standard for determining whether to discontinue benefits; accordingly, diverse standards for termination had emerged in courts across the country. Congress was understandably intolerant of such a result. *Id.*

Mr. Hendricks to receive attorneys' fees. Congress was on full notice that there were thousands of outstanding claimants whose claims would be remanded and reconsidered by operation of the Reform Act. However, nothing in the Reform Act expresses a desire or expectation that those claimants would receive attorneys' fees if their benefits were reinstated. The legislative history appears silent on the subject, and the projections of the expected costs of the Reform Act, as prepared by the Congressional Budget Office and the Office of the Actuary, Social Security Administration, do not reflect any anticipation that the government would be obligated to pay attorneys' fees as a result of the Act's passage. *See* H.R.Rep. No. 618, 98th Cong., 2d Sess. 38–44, *reprinted in* 1984 *U.S. Code Cong. & Admin.News* 3038, 3074–80; S.Rep. No. 466, 98th Cong., 2d Sess. 34–42 (1984). In our view, this lack of Congressional attention to the enormous financial impact of awarding attorneys' fees is evidence that Congress did not intend the EAJA to apply.

### Conclusion

Accordingly, the decision of the district court is affirmed.

AFFIRMED.

EASTERBROOK, Circuit Judge, concurring.

I agree with my colleagues that Mr. Hendricks is not entitled to attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), because he did not show that the position of the United States in this case lacks "substantial justification" and therefore join Parts I and II.A of the court's opinion. I disagree with my colleagues to the extent they conclude that no person whose case was remanded to the Secretary under the Social Security Disability Benefits Reform Act of 1984, 98 Stat. 1794, may recover fees under the EAJA. An award is both appropriate and necessary when the claimant would have prevailed in his quest for benefits, and would have recovered fees, had the Reform Act never existed.

Much can be said for the view that the Reform Act was designed to take tens of thousands of disability cases out of the courts and speed them on their way to a final administrative disposition. Petitions under the EAJA could embroil the courts in some of the disputes that were packed off to another forum. Yet as the majority emphasizes, neither the Reform Act nor its legislative history mentions the EAJA. Repeal by implication thus is implausible, see *Traynor v. Turnage,* —— U.S. ——, ——, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988)—the more so since the EAJA was reenacted after the Reform Act, without anyone's mentioning that statute. Pub.L. 99–80, 99 Stat. 184 (Aug. 5, 1985). So the EAJA applies to the extent it ordinarily would. The question becomes whether Hendricks is a "prevailing party".

Hendricks prevailed. He was receiving disability benefits, which the Secretary cut off in March 1983. Had he accepted this decision, benefits would have stayed cut off. Instead Hendricks filed this suit. Because—and only because—he did this, his benefits ultimately were restored, not only for the future but also retroactively. The suit was pending when the Reform Act went into effect on September 19, 1984. The claim was remanded automatically, and Hendricks was given benefits on remand. No suit in 1983, no pending action in September 1984, no benefits. The suit was a necessary condition of the restoration.

Was it a sufficient condition? If the benefits were restored only because of new legal standards in the Reform Act, then the answer is no. This suit did not cause Congress to enact the Reform Act. One or a hundred or even a thousand suits, more or less, would not have affected that legislation. So Hendricks does not recover on the theory that this suit was the "catalyst" for legal change. If the award sprang from new legal standards then Hendricks was a fortuitous beneficiary, and serendipity is not a reason for rewarding lawyers. The EAJA is designed to make whole those who must fight the government in court to secure their legal entitlements. If Hendricks

received his legal entitlements in 1983, he gets nothing under the EAJA.

Perhaps, however, Hendricks (or others whose fate is sealed by today's decision) was entitled to recover under the legal standards that predated the Reform Act— perhaps so clearly entitled to recover that the government's contrary position was not "substantially justified". Let us assume that the government's position in *A*'s case was not substantially justified, but that *A* is otherwise just like Hendricks. *A* incurred substantial legal fees in mid–1983 demonstrating the flaw in the Secretary's termination of his benefits. He was entitled to their restoration, pronto. Let us suppose, too, that but for the press of business the judge would have granted summary judgment (worth $40,000) to *A* and added $10,000 in fees under the EAJA. *A* would get the $40,000, his legal entitlement, and still be able to compensate his attorney in full (to the extent the $75 hourly rate under the EAJA can be called "full" compensation). But the glut of business (much from other disability cases) prevented this. The case was sitting, awaiting judicial attention, on September 19, 1984, and therefore was remanded. *A* still would receive $40,000, but now he would have to pay his lawyer out of his own pocket, leaving him with only $30,000, or $10,000 short of his legal entitlement. It was to prevent this sort of diminution by unreasonable governmental action that the EAJA was enacted. It was because Congress suspected that many of the terminations of disability benefits had been unreasonable that the Reform Act was enacted. Yet under the court's approach today, the combination of unreasonable termination of benefits with a legislative remedy leaves the victim out of pocket the fees necessary to receive the treatment that was his due without regard to the remedial legislation.

It is not hard to devise cases more appealing still. Suppose the district judge had written an opinion awarding *A* both benefits and fees, but withheld releasing the opinion because the Reform Act mooted the case. *Truax v. Bowen*, 842 F.2d 995 (8th Cir.1988), may have been just such a case, for the majority in *Truax* reported that the district court was "ready to rule in [Truax's] favor" when the Reform Act went into effect. Suppose the court had remanded the case to the Secretary before the Reform Act, but in making the award of benefits the Secretary invoked that statute. There are many such cases, e.g., *Broussard v. Bowen*, 828 F.2d 310 (5th Cir.1987); *Neff v. Heckler* [available on WESTLAW, 1988 WL 21964] (E.D.Pa.1988). Or suppose that before the Reform Act half of the judges in a district decided disability cases about 18 weeks after filing, while the other half took 18 months. The half of the plaintiffs whose cases were decided expeditiously would receive their full benefits and fees, while the other half would (eventually) get their benefits on remand but have to tap these benefits to pay their legal expenses. No interpretation of either the EAJA or the Reform Act makes entitlement to attorneys' fees turn on how fast the district court decides the case, yet that is a logical consequence of my colleagues' approach.

What of the case or controversy requirement of Article III? Once the Reform Act came into force, there was no continuing dispute about entitlements under prior law. Hendricks (and others like him) cannot compel courts to decide hypothetical legal questions just to secure attorneys' fees. See *Diamond v. Charles*, 476 U.S. 54, 69–71, 106 S.Ct. 1697, 1707–1708, 90 L.Ed.2d 48 (1986), which holds that exposure to awards of fees cannot create a case or controversy. *Diamond* depended, however, on the fact that the intervenor (who had been socked with fees) was an intermeddler, one who but for the fees issue was the wrong person to bring or defend the suit. If intermeddlers' entitlement (or exposure) to attorneys' fees were sufficient to require adjudication of the merits, the case-or-controversy requirement would be gone. Hendricks and others like him, however, were the right parties to challenge the termination of their own disability benefits. This case therefore is like one filed under 42 U.S.C. § 1983 by a proper plaintiff that becomes moot because the defend-

ant capitulates. If the plaintiff was otherwise entitled to fees (that is, was going to win anyway), he recovers; if the defendant changed its policies for reasons unrelated to the merit of the suit and the plaintiff had no claim, then no fees are awarded, see *Hewitt v. Helms,* — U.S. ——, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987); in either case no one doubts the authority of the court to address so much of the merits as is necessary to determine whether the plaintiff would have won, had the defendant not, by consenting, prevented it. Cf. *Palmer v. City of Chicago,* 806 F.2d 1316, 1321 (7th Cir.1986) (assuming the propriety of this approach); Comment, *Civil Rights Attorney's Fees Awards in Moot Cases,* 49 U.Chi.L.Rev. 819 (1982).

Hendricks prevailed. Because the position of the Secretary was substantially justified, all three of us agree, Hendricks is not entitled to fees. Someone like Hendricks whose benefits were terminated *un-*reasonably should recover the costs of putting things right. If the claimant would have prevailed under the law that predated the Reform Act, if the government's position under that pre–1984 law was unreasonable, and if incurring fees before September 19, 1984, was prudent (which it would not be if counsel did a lot of work even after it became clear that a statute would be passed), the claimant should be made whole. This string of "ifs" will turn away many, but the EAJA is not an automatic loser-pays statute. When the EAJA otherwise would have required the government to pay, though, the creation of a new entitlement in the Reform Act should not make the claimants worse off.