March 4, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1763

ANTONIA PARIS, ET AL.,

Plaintiffs-Appellants,

v.

U.S. DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT, ET AL.,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

John W. Dineen, with whom Yesser, Jessup & Green, was on

brief for appellants.
Herbert E. Forrest, Federal Programs Branch, Civil Division,

Department of Justice, with whom Stuart M. Gerson, Assistant

Attorney General, Lincoln C. Almond, United States Attorney and

William G. Kanter, Attorney, Appellate Staff, were on brief for

appellee U.S. Department of Housing and Urban Development.
Nora J. Mann, with whom Leigh A. McLaughlin and Gilman,

McLaughlin & Hanrahan, were on brief for appellee Corcoran

Management Co., Inc.

March 4, 1993

TORRUELLA, Circuit Judge. This case requires that we

decide whether a party who loses on the only litigated claim, but

achieves the relief sought as a result of intervening

congressional action prior to a ruling by the district court on

the remaining grounds in the complaint, can nevertheless recover

attorney's fees. We hold that, in appropriate cases, the

district court may award attorney's fees. Because we find this

to be such a case, we reverse the district court ruling to the

contrary, and remand for action consistent with this opinion.

I

BACKGROUND1
BACKGROUND

Appellants, a group of very low income families,

challenged a tenant selection scheme at the Chad Brown public

housing project in Providence, Rhode Island. In the late 1970s,

the Department of Housing and Urban Development ("HUD") and the

Providence Housing Authority ("PHA") hired Corcoran Management

Co., Inc. ("Corcoran") to supervise the modernization of the

project. In order to achieve an economic mix of tenants,

Corcoran, with HUD's approval, attempted to implement a plan that

would skip-over very low income families on the waiting list and

settle higher income families first.

In 1986, appellants sought declaratory and injunctive

relief against both HUD and Corcoran. The complaint alleged that

HUD's adoption of the income mixing scheme violated the United

States Housing Act of 1937 ("Housing Act"), 42 U.S.C. 1437 et

1 The facts underlying this case are detailed at Paris v. Dept.

of Housing & Urban Development, 843 F.2d 561 (1st Cir. 1988)

("Paris I").

seq. (Supp. 1992); the Fair Housing Act, 42 U.S.C. 3601 et seq.

(1977 & Supp. 1992); and the Due Process and Equal Protection

Clauses of the Constitution of the United States. Appellants

also brought a claim against Corcoran under 42 U.S.C. 1983 for

violation of their civil rights on the same statutory and

constitutional grounds. The district court granted a preliminary

injunction based on the Housing Act claim. We reversed,

expressly leaving the other issues open for resolution by the

district court. Paris I, 843 F.2d at 574 n.20.

In the summer of 1988, Congress passed the Stewart B.

McKinney Homeless Assistance Amendments Act of 1988. This law

prohibited public housing agencies from by-passing the order of

the waiting list for the purpose of assisting higher income

families first.2 The Conference Report stated that, "[w]hile the

conferees affirm the principle of income mix in assisted housing

projects, this amendment (which is necessary in light of the

decision in Paris v. HUD, 843 F.2d 561) makes it clear that lower

income families on a waiting list may not be skipped over in

2 The act provided in relevant part:

Sec. 1001. Income Eligibility for
Assisted Housing. (b) CLARIFICATION.--
Section 6(c)(4)(A) of the United States
Housing Act of 1987 (42 U.S.C.
1437d(c)(4)(A)) is amended by inserting
before the semicolon at the end the
following: "and shall not permit public
housing agencies to select families for
residence in an order different from the
order on the waiting list for the purpose
of selecting relatively higher income
families for residence." Pub. L. No.
100-628, 1001(b), 102 Stat. 3263.

-3-

order to help a higher income family first." H.R. Conf. Rep. No.

1089, 100th Cong., 2d Sess. 91-92 (1988), reprinted in 1988

U.S.C.C.A.N. 4450, 4475-76 (emphasis supplied). HUD and Corcoran

amended the income mixing plan to conform to these statutory

changes. Appellants moved for a voluntary dismissal having

achieved their goal. The district court dismissed the suit

without reaching the other legal issues in the case.

In 1990, appellants moved for an attorney's fee award

against HUD under the Equal Access to Justice Act ("EAJA"), 28

U.S.C. 2412(d)(1)(A), and the Fair Housing Act, 42 U.S.C.

3613(c)(2). Appellants similarly sought fees from Corcoran

under the Civil Rights Attorney's Fees Awards Act of 1976, 42

U.S.C. 1988, and the Fair Housing Act. The district court

rejected the claim under the EAJA finding that appellants were

not "prevailing parties" and that the government's position in

the litigation was "substantially justified." It refused

recovery under the Fair Housing Act and 1988, reasoning that it

could not award fees pursuant to those statutes unless the party

prevails on those claims. Since appellants voluntarily dismissed

the action before the court considered those issues, the court

denied the fee request.

II

EAJA CLAIM

A party seeking attorney's fees under 2412(d)(1)(A)

of the EAJA must demonstrate that it is a "prevailing party" and

-4-

that the government's position was not "substantially

justified."3 The prevailing party inquiry under the EAJA is

consistent with that under other federal fee-shifting statutes.

Texas State Teachers Ass'n v. Garland Independent School Dist.,

489 U.S. 782, 784 (1989); Guglietti v. Secretary of HHS, 900 F.2d

397, 398 (1st Cir. 1990). In general, the court looks for some

"material alteration of the legal relationship of the parties in

a manner which Congress sought to promote in the fee statute."

Texas Teachers, 489 U.S. at 792-93; see also Farrar v. Hobby, 113

S. Ct. 566, 572-73 (1992). We have identified two main avenues

by which a party may demonstrate the changed legal relationship.

The party either must enjoy bottom-line success in the litigation

or act as a catalyst in causing the desired alteration.

Guglietti, 900 F.2d at 400-01; Nadeau v. Helgemoe, 581 F.2d 275,

278-79 (1st Cir. 1978). Unlike other fee-shifting statutes, the

EAJA presents the additional hurdle of showing that the

government's position was not substantially justified. Compare

42 U.S.C. 1988(b) (Civil Rights Attorney's Fees Awards Act) and

42 U.S.C. 3613(c)(2) (Fair Housing Act) with 28 U.S.C.

3 28 U.S.C. 2412(d)(1)(A) (Supp. 1992) provides:

Except as otherwise specifically provided
by statute, a court shall award to a
prevailing party other than the United
States fees and other expenses, in any
civil action (other than cases sounding
in tort), including proceedings for
judicial review of agency action, unless
the court finds that the position of the
United States was substantially justified
or that special circumstances make an
award unjust.

-5-

2412(d)(1)(A) (EAJA).

We review the district court's prevailing party and

substantial justification determinations under the abuse of

discretion standard. Pierce v. Underwood, 487 U.S. 552, 558-63

(1988) (substantial justification); McDonald v. Secretary of

HHS, 884 F.2d 1468 (1st Cir. 1989) (prevailing party). When the

district court errs with respect to a purely legal issue,

however, our review is de novo. Domegan v. Ponte, 972 F.2d 401,

406-07 (1st Cir. 1992); see also Guglietti, 900 F.2d at 399.

For the moment we shall postpone consideration of the

district court's finding on prevailing party status because

appellants' claim under the EAJA is dispensed with easily under

the substantial justification prong of the EAJA fee award

inquiry. Appellants predicate their EAJA claim on their alleged

success on the substantive Housing Act claim. Because the

Housing Act does not have its own fee-shifting provision,

appellants were forced to seek fees under the general federal

fee-shifting statute, the EAJA. HUD and Corcoran's position with

respect to the Housing Act was clearly justified prior to the

McKinney Amendments. Indeed, this court agreed with their

interpretation of the Housing Act in Paris I. Congress' later

action does not alter our conclusion. Thus, the district court

did not abuse its discretion in denying attorney's fees under the

EAJA.

III

FAIR HOUSING ACT AND SECTION 1988

-6-

Unlike the EAJA, neither the Fair Housing Act's fee-

shifting provision,4 nor section 1988,5 require that appellants

demonstrate that the government's position was not substantially

justified. The district court rejected appellants' arguments

reasoning that success on these claims, by which it must have

meant--judicial consideration prior to success that mooted the

court proceedings--was the sine qua non of an award of fees

pursuant to these statutes. HUD and Corcoran make the

superficially appealing argument that fees cannot be awarded to a

party who lost on the only issue that was litigated. We are

unpersuaded.

In Maher v. Gagne, 448 U.S. 122 (1980), the Supreme

Court considered whether a party that sued state officials under

the Social Security Act, 42 U.S.C. 402(a)(7), 602(a)(7), and

the Equal Protection and Due Process Clauses of the Fourteenth

Amendment of the United States Constitution, but settled the case

4 The Fair Housing Act fee-shifting provision, 42 U.S.C.
3613(c)(2) (Supp. 1992) provides in relevant part:

[T]he court, in its discretion, may allow
the prevailing party, other than the
United States, a reasonable attorney's
fee and costs. The United States shall
be liable for such fees and costs to the
same extent as a private person.

5 42 U.S.C. 1988 (b) (Supp. 1992) provides:

In any action or proceeding to enforce a
provision of section[] . . . 1983 . . .
the court, in its discretion, may allow
the prevailing party, other than the
United States, a reasonable attorney's
fee as part of the costs.

-7-

by entry of a consent decree prior to determination by the

district court of whether her constitutional rights had been

violated, could recover attorney's fees under section 1988.6

The court held that the district court's power to award fees was

not conditioned on "full litigation of the issues or on a

judicial determination that the plaintiff's rights have been

violated." Maher, 448 U.S. at 129. The Court stated that

"Congress intended fees to be awarded where a pendent

constitutional claim is involved, even if the statutory claim on

which the plaintiff prevailed is one for which fees cannot be

awarded under the Act."7 Id. at 132 n.15. The Maher court

recognized that such a policy provided a perfect balance between

the congressional policy of encouraging suits to vindicate

constitutional rights and the policy against unnecessary decision

of constitutional questions. Id. at 133.

The Court did not intend that the district court

litigate the merits of the claims once the case had been resolved

6 In Maine v. Thiboutot, 448 U.S. 1, 9-10 (1980), the Court held

that 1988 provides a basis for awards for any 1983 action,
including those based on statutory, rather than, constitutional
violations. In Maher, as here, the unlitigated claims were both

statutory and constitutional.

7 The legislative history accompanying H.R. 15460, a bill almost
identical to that passed stated: "if the claim for which fees
may be awarded meets the 'substantiality' test, see Haggans v.

Lavine, [415 U.S. 528 (1974)]; United Mine Workers v. Gibbs, 383

U.S. 715 (1966), attorney's fees may be allowed even though the
court declines to enter judgment for the plaintiff on that claim,
so long as the plaintiff prevails on the nonfee claim arising out
of a 'common nucleus of operative fact.' United Mine Workers v.

Gibbs, supra, at 725." Maher, 448 U.S. at 133 n.15 (quoting H.R.

Rep. No. 1558, 94th Cong., 2d Sess. 4 n.7 (1976)).

-8-

in order to decide the fee issue. On the contrary, the Court has

cautioned against such wasteful secondary litigation. Texas

Teachers, 489 U.S. at 791. In Haggans v. Lavine, 415 U.S. 528

(1974), the Court developed a "substantiality" test to aid lower

courts in determining when it is appropriate for them to exercise

jurisdiction over statutory causes of action that, although

pendent to constitutional claims over which the court has

jurisdiction, have no independent jurisdictional basis. Id. at

542. Applied in this different context, the Haggans test serves

as a proxy for determination on the merits of the claims once the

litigation is resolved to establish that an attorney's fee award

is justified. The threshold "substantiality" test conserves

judicial resources while continuing to require that plaintiffs

demonstrate that their success is sufficiently related to a civil

rights victory before receiving fees under a fee-shifting regime.

In Smith v. Robinson, 468 U.S. 992 (1984), the Supreme

Court clarified principles implicit in Maher, by explaining that

"plaintiffs may not rely simply on the fact that substantial fee-

generating claims were made during the course of the litigation."

Id. at 1007. Further examination of the claims and their

relationship is required. The Court specifically stated that

there was nothing wrong with seeking relief under a certain

statute, or amending a complaint, to include a claim for which

attorney's fees are available. Id. at 1009 n.12. The court

concluded, however, that where petitioners "have presented

-9-

distinctly different claims for different relief, based on

different facts and legal theories, and have prevailed only on a

nonfee claim, they are not entitled to a fee award simply because

the other claim was a constitutional claim that could be asserted

through 1983." Id. at 1015.

This case does not present that situation; the facts

arise from a common nucleus of operative fact, and the theories

are but different statutory avenues to the same goal. The

appellants are victims of a happenstance that the district court

opted to decide on the basis of the Housing Act claim, and that

the appeal proceeded as it did, before Congress intervened. Nor

are we presented with the situation in Smith, in which the

Supreme Court held that one of the several statutory and

constitutional claims was the exclusive avenue of redress,

thereby barring recovery under another fee-shifting statute

alleged in the complaint.8

On the contrary, we think that the principles of Maher

clearly apply to the present case. Maher considered one manner

in which cases are resolved without formal adjudication or

8 In Smith, plaintiffs asserted claims based on state law; the

Education of the Handicapped Act (EHA), 84 Stat. 175, as amended,
20 U.S.C. 1400 et seq.; section 504 of the Rehabilitation Act

of 1973, 87 Stat. 394, as amended, 29 U.S.C. 794; and the Due
Process and Equal Protection Clauses of the Fourteenth Amendment.
The Court concluded that where a remedy was provided with
"clarity and precision" under the EHA, a plaintiff may not
circumvent that exclusive avenue by appeal to other statutory
schemes. Smith, 468 U.S. at 1021. Congress subsequently altered

the Court's specific holding under the EHA to provide fees in the
Handicapped Children's Protection Act of 1986, Pub. L. No. 99-
372, 100 Stat. 796, codified at 20 U.S.C. 1415 (Supp. 1992).

-10-

decision by a court on all issues raised by the parties.

Voluntary dismissal is but another way in which a plaintiff saves

judicial resources once it has achieved its desired goal.

After a case is resolved, by whatever method, and a

party requests attorney's fees, we look for a "prevailing party"

within the meaning of term as spelled out in the case law.

Appellants are not a "prevailing party" under the merits test

since the court never considered the merits of the claims in

issue. Langton v. Johnston, 928 F.2d 1206, 1224 (1st Cir. 1991);

Coalition for Basic Human Needs v. King, 691 F.2d 597, 599 (1st

Cir. 1982) (merits test "states the obvious, that a party has

prevailed if it wins the litigation"). Appellants, however, are

a catalyst under Guglietti, 900 F.2d at 401-02, and Nadeau, 581

F.2d at 279-80. To be a catalyst the party must demonstrate (1)

a causal connection between the litigation and the relief sought

and (2) that the success was not obtained by a gratuitous gesture

of the fee-target. Guglietti, 900 F.2d at 401. The suit need

not be the sole cause but must play a "provocative" role or be a

"competent producing cause." Id.

The district court summarily determined that appellants

were not catalysts because it believed that Congress, not the

litigation, caused defendants to change their income mix policy.

We think this argument is incorrect.

The fact that Congress delivered the plaintiffs'

requested relief rather than the parties sued, HUD and Corcoran,

provides no relevant distinction. Corcoran, HUD, and Congress

-11-

are manifestations of the same entity, the government. HUD is

simply an instrument of Congress' will, and Corcoran does HUD's

bidding.

The district court also relied on our decision in

Guglietti, 900 F.2d 397, to deny appellants prevailing party

status under the catalyst theory. In Guglietti, plaintiff's

Social Security disability benefits were terminated. Guglietti

sought review of the determination. While on appeal to this

court, Congress amended the statute and directed that cases on

appeal, such as Guglietti's, be remanded for a determination

under the new statutory standard. Under that standard, his

benefits were reinstated. Guglietti obtained attorney's fee

under the EAJA in the district court. On appeal, we reversed the

award. Guglietti, 900 F.2d at 403. We reasoned that because

plaintiff was just one of thousands of similar claims, the

relationship between the litigation and Congress' action was too

tenuous to be considered the "provocative" cause of legislation.

Id. at 401 (relying on Hendricks v. Bowen, 847 F.2d 1255, 1258

(7th Cir. 1988); Truax v. Bowen, 842 F.2d 995, 997 (8th Cir.

1988)).

This case is clearly distinguishable from Guglietti,

however. Here the Congressional change was wrought by one case,

Paris I. The Conference Report specifically states that the

amendments were necessary to change the result in Paris I. H.R.

Conf. Rep. No. 1089 at 91-92, see ante at p. 3. Guglietti

recognized that assigning a particular case among thousands in

-12-

the context of social securities benefits strains the notion of

provocative cause. To read Guglietti to prevent attorney's fee

in the present case is to negate the possibility of ever granting

attorney's fees when Congress amends or clarifies legislation and

thereby secures plaintiff's requested interpretation of a

statute. Plaintiffs would be forced to choose between litigation

and pursuing legislative changes via lobbying activities, or risk

losing an award of fees. Such an insurmountable barrier to

recovery would contravene Congress' intent in enacting fee-

shifting statutes. Texas Teachers, 489 U.S. at 793. In any

event, this case sits at the opposite end of the spectrum from

Guglietti since Congress specifically mentioned the case in the

legislative history as being the "necessary" force behind its

enactment.

Appellants' suit is, thus, fairly characterized as a

catalyst of Congress' amendment. The district court erred in

holding to the contrary. As such, appellants' law suit affected

a "material alteration of the legal relationship of the parties

in a manner which Congress sought to promote" in the fee-shifting

provisions of the Fair Housing Act with respect to the

government, and in 1988 with respect to Corcoran. Texas

Teachers, 489 U.S. at 792-93.

Unfortunately this case is not at an end. On remand,

the district court must determine two matters. First, the court

must decide whether appellants raised statutory and/or

constitutional claims that pass the "substantiality" test of

-13-

Maher and Haggans in order to recover under the alternative fee-

shifting regimes pursuant to unlitigated claims.9 Second, the

district court must determine the amount of fees to which

appellants are entitled under Hensley v. Eckerhart, 461 U.S. 424

(1983), as "the degree of the plaintiff's overall success goes to

the reasonableness of the award under Hensley, not to the

availability of a fee award vel non." Texas Teachers, 489 U.S.

at 793.

Reversed and remanded for action consistent with this

opinion.

9 As we have not heard argument on those claims we cannot answer
that question.

-14-