**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 2 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

NORMA J. ALEXANDER,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 02-5046
(D.C. No. 00-CV-918-M)
(N.D. Okla.)

---

ORDER AND JUDGMENT   *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Norma J. Alexander appeals from the magistrate judge's order affirming the Commissioner's denial of her application for supplemental security income benefits. [1] We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We affirm in part, and reverse and remand in part.

**Background**

Plaintiff filed for benefits in December of 1997, initially alleging an onset disability date of March 2, 1990. She was born in 1953 and described her past work as pant and coat pressing, housekeeping, and telemarketing. Aplt. App. Vol. 2, at 109. Plaintiff's amended alleged onset date was accepted as November 21, 1997. She claimed she was disabled due to degenerative joint disease, with associated back and leg pain; diabetes; osteoarthritis; flat feet; and hypertension.

Plaintiff first had lumbar spinal surgery in 1985 or 1986. In March of 1998, she underwent a bilateral L4-5 hemilaminectomy with L-5 discectomy. In June of 1998, she had a repeat L4-5 hemilaminectomy and discectomy, this time with bilateral posterolateral fusion. In September, her treating orthopedic physician, Dr. Boone, wrote that although plaintiff was better than she had been

_____

[1] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c)(1) and (3).

pre-operatively, she was still having some chronic pain "probably due to some chronic changes in the L5 nerve root." *Id.* at 232. Dr. Boone anticipated plaintiff would need to pursue sedentary type work in the future and that "she probably will have some element of chronic pain in the lower extremities due to a combination of scarring around nerve roots with superimposed diabetic neuropathy changes." *Id.*

Two months later, Dr. Boone wrote that he had told her that "after the first of the year [January of 1999] she could consider returning to work . . . ." *Id.* at 230. Dr. Boone and his partners continued to renew her pain medication prescriptions for Lortab, Nortriptyline, Soma, and Pamelor through February of 1999, when Dr. Boone referred her to her primary physician and advised her she might need to see a neurologist because of her diabetic neuropathy. *Id.* at 236-37.

In April of 1999, in response to specific questions from plaintiff's attorney, Dr. Boone offered his opinion that plaintiff was likely to experience episodes of severe pain often enough to limit her ability to work three to four hours per day, that the work needed to be of a sedentary nature, that she could miss an average of a day a week of work, and that her pain might require her to lie down approximately two hours daily. *Id.* at 274.

Following a hearing, the administrative law judge (ALJ) found that plaintiff was disabled from November 21, 1997, through December 31, 1998, "when she

had medical improvement in her condition related to her ability to work, and her disability ceased." *Id.* at 21. The ALJ further determined that on January 1, 1999, plaintiff was able to return to her previous job as a telemarketer or, alternatively, that there were other jobs she could perform. *Id.* The ALJ therefore denied benefits at steps four and five of the review process. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing sequential evaluation process).

On appeal, plaintiff contends that the ALJ erred because he failed to properly consider her treating physician's opinion regarding her residual functional capacity (RFC) and because the ALJ failed to perform a proper credibility analysis.

**Standard of Review**

We review the agency's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). In addition,

-4-

the agency's failure either to apply correct legal standards or to show us it has done so is also grounds for reversal. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Shortly after the ALJ's decision was issued, we held in *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999), that the medical improvement standard, as defined by 20 C.F.R. § 404.1594(b)(1) and (for our purposes) § 416.994(b)(1)(i), applies in "closed period" cases such as this one, in which a plaintiff is determined to have been disabled for a finite period of time and thereafter regained the ability to work.

The regulations define medical improvement as

> [a]ny decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s).

*See* 20 C.F.R. § 416.994(b)(1)(i). In *Shepherd*, we detailed the process an ALJ must follow in determining whether a plaintiff has achieved medical improvement and, if so, whether this medical improvement is related to the ability to work. *Shepherd*, 184 F.3d at 1201-02. The ALJ will need to apply this standard on remand.

Finally, because the substantiality of the evidence is based on the record taken as a whole, we will "meticulously examine the record" in order to determine

if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (quotation omitted).

## Treating Physician's Opinion

After determining that plaintiff was entitled to a period of disability from November 21, 1997, through December 31, 1998, the magistrate judge determined that the record contained sufficient objective medical evidence supporting the ALJ's finding of medical improvement to the degree that plaintiff's ability to work was restored. After careful review of the evidence, we cannot agree.

In finding plaintiff disabled from her alleged onset date of November 21, 1997, to December 31, 1998, the ALJ found that for that period her impairments "limited her to less than a full range of sedentary work activity significantly compromised by his [sic] inability to do sustained work-related physical and/or mental activities in a work setting on a regular and continuing basis." Aplt. App. Vol. 2, at 15. The ALJ further concluded that the regulations therefore directed a finding of disabled because her ability to perform sedentary work was "significantly compromised." *Id.*

The ALJ also stated that "Dr. Boone stated that the claimant could return to work after the first of the year," *id.* at 15, citing the letter in which Dr. Boone stated he had advised plaintiff that she "*could consider* returning to work" after

-6-

the first of the year (January 1999), *id.* at 230 (emphasis added). The ALJ further stated that "[a]s of January 1, 1999, the claimant *was released to return to work* as a result of improvement of her condition. She was advised by her treating physician not to return to heavy or labor intensive work." *Id.* at 16 (emphasis added). He then found that as of January 1, 1999, her impairments limited her to light level work activity, with certain restrictions. *Id.* As discussed below, however, the record does not show that claimant's condition had improved as of January 1999.

In support of his determination that plaintiff could return to work because of an improvement in her condition, as long as she did not return to heavy work, the ALJ cited another letter of Dr. Boone in which he referred to her inability to return to heavy work, but said she would need to pursue sedentary work. *Id.* at 232. This letter did not release her to return to work as of January 1, 1999, and included Dr. Boone's opinion that plaintiff would probably have "some element of chronic pain of the lower extremities due to a combination of scarring around nerve roots with superimposed diabetic neuropathy changes," *id.*, a point the ALJ did not mention.

Instead, the ALJ determined that Dr. Boone's April 1999 opinion (that plaintiff would be limited to three to four work hours per day) conflicted with the doctor's other treatment records because "[o]n November 17, 1998, Dr. Boone

stated that claimant could return to work after the first of the year." *Id.* at 18. Because this is a misstatement of what Dr. Boone in fact said, it cannot stand as substantial evidence of medical improvement. Nor does it suffice to meet the Commissioner's requirements for evaluating opinion evidence, which require that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *See* 20 C.F.R. § 416.927(d)(2). Further, in favoring Dr. Boone's November 1998 opinion that plaintiff could consider returning to work in January of 1999 over his April 1999 opinion regarding her limitations (which also included his opinion that she might miss a day a week of work and need to lie down twice a day), the ALJ impermissibly engaged in the type of selective and misleading evidentiary review we have long condemned. *See Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) (holding it was error for ALJ to summarily reject some medical reports as based on inadequate findings when they are comparable to reports ALJ found sufficiently detailed); *see also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) (holding it was improper for Secretary to use portions of report favorable to her position while ignoring other parts). By mischaracterizing Dr. Boone's statements regarding plaintiff's possible return to work, the ALJ created whatever inconsistency he thought there was. In sum, the ALJ failed in his obligation to give Dr. Boone's opinion "substantial weight unless good cause is shown to

disregard it." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995).

## Credibility Analysis

Plaintiff also argues that the ALJ failed to perform a proper credibility analysis. We agree. In addressing her allegations of disabling pain, the ALJ recited boilerplate language stating that full consideration had been given to her subjective complaints in accordance with the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, 1996 WL 374186; *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987), and *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995). Aplt. App. Vol. 2, at 16. He did not, however, perform the required analysis. In addition, in determining that plaintiff's statements were not supported by the record, he again misstates that very record.

In discussing plaintiff's allegations of disabling pain, the ALJ acknowledged her testimony that her pain was normally at seven on a scale of one to ten; that she has a burning pain in her feet, aggravated by wearing shoes, standing, or walking; that her hands hurt and ache; that she can stand about thirty minutes; sit about forty minutes; that she can lift a gallon of milk; that during the day she sits in a recliner; and that she attends church about once a month. *Id.* at 16-17.

The ALJ stated that "[s]he has seen Dr. Studdard for routine medical care with only one complaint of feet pain on February 22, 1999." *Id.* at 17. To the contrary, she complained again of foot pain and muscle cramps five days later. *Id.* at 267. In fact, she had complained to Dr. Studdard of her left foot being hard and swollen in December of 1997. *Id.* at 140. She had also complained of pain in her feet and ankles, with numbness in her toes, during a consultative examination in April of 1998. *Id.* at 175-76. She complained of bilateral foot pain in April, June, July, and August of 1998. *Id.* at 205, 208, 210. Dr. Boone stated that this pain "could be related to scarring, epidural fibrosis, or chronic nerve injury" or even "an element of diabetic neuropathy." *Id.* at 207. She also reported in November that her feet were swelling. *Id.* at 238. When Dr. Boone referred her back to her primary care physician in February of 1999, he noted that she might need to see a neurologist. She had reported foot pain at that time, as well. Aplt. App. Vol. 2, at 236.

The ALJ further opined that if plaintiff "were in the constant and disabling painful condition as alleged, it is reasonable to assume she would exhaust every means possible to obtain relief of that pain." *Id.* at 17. He failed, however, to take note of her consistent, persistent attempts to relieve the pain through medication, an element critical when pain is alleged, including numerous reports that her medication was not working or that she wanted to try something

different. [2] *See id.* at 139-41, 143-44, 145-47, 154-55, 208-09, 236-37, 239-42, 244-54. As of 1999, after she returned to Dr. Studdard's care, [3] she was still receiving prescription pain medication. *Id.* at 266-67. There is no suggestion from any medical source that she is exaggerating her pain.

In evaluating plaintiff's subjective claims of pain, an ALJ's findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (quotation omitted). In this case, we have only the conclusion that plaintiff's "reported activities are not indicative of her complaints of totally disabling pain." Aplt. App. Vol. 2, at 17. It is not sufficient, however, for the ALJ to state in conclusory fashion that all claimant's allegations have been considered or are not credible. Rather, the ALJ's decision must contain specific reasons for his credibility determination. SSR 96-7p, 1996 WL 374186, at *2. Having failed to properly assess plaintiff's credibility, in part by not giving "specific reasons for the weight given to [plaintiff's] statements," as supported by the record, *see id.* at *4, and by failing to adequately consider (or show us that he has considered)

---

[2]    Under the heading "consistency," the adjudicator is told that "[e]specially important are statements made to treating . . . medical sources." SSR 96-7p, 1996 WL 374186, at *5.

[3]    The ALJ emphasized that plaintiff had not seen Dr. Boone since November of 1998. Aplt. App. Vol. 2, at 17. The record shows, however, that she returned to and was in frequent contact with Dr. Studdard after that time. *Id.* at 265-72.

the other required factors, *id.* at *5-*8, the ALJ did not provide the documentation necessary to give plaintiff a full and fair review of her claim and to ensure a well-reasoned decision. *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (citing SSR 96-7p) (ALJ "may not ignore evidence that does not support his decision, especially when the evidence is significantly probative").

Finally, we note that the ALJ's determination of plaintiff's RFC does not comply with the requirements of SSR 96-8p, which requires separate consideration "of seven strength demands: i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling." 1996 WL 374184, at *5. Nor did the ALJ complete the required function-by-function assessment. *Id.* at *3. Instead, he simply found "that her impairments limit her to light level work," Aplt. App. Vol. 2, at 16, a determination he later declared to be "reasonable." *Id.* at 18. This was error because "at step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of sedentary, 'light' 'medium,' 'heavy,' and 'very heavy' work." SSR 96-8p, 1996 WL 374184, at *3. Consequently, the ALJ's determination of plaintiff's RFC is also not supported by substantial evidence. On remand, the ALJ must reevaluate plaintiff's RFC in accordance with this ruling.

## Conclusion

Because this cause must be remanded for further proceedings, the ALJ will also need to reconsider plaintiff's application under the medical improvement standards we announced in *Shepherd*. The judgment of the district court upholding the Commissioner's determination of a closed period of disability from November 21, 1997, through December 31, 1998, is AFFIRMED. The judgment of the district court as to ending that period of disability on December 31, 1998, is REVERSED, and the cause is REMANDED to the district court with directions to remand the action to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge