**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MAGDALENA ARTEAGA,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 03-7099
(D.C. No. 02-CV-579-W)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **ANDERSON** , and **BRISCOE** , Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Magdalena Arteaga filed applications for disability insurance benefits and supplemental security income contending that she has been disabled since December 1, 2000, due to noninsulin-dependent diabetes mellitus, anxiety, and depression. An administrative law judge (ALJ) held a hearing on plaintiff's applications in December 2001 and issued a decision in February 2002 finding plaintiff not disabled. When the Appeals Council later denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. A magistrate judge affirmed the Commissioner's decision, and plaintiff now appeals. Because the Commissioner applied the correct legal standards and her decision is supported by substantial evidence, we affirm.

I.

In 1999, plaintiff began seeking treatment for diabetes, depression, and an anxiety disorder from Dr. Jerry L. Russell, a primary-care physician. Dr. Russell continued treating her, but also referred her to a psychiatrist and an endocrinologist. The psychiatrist referred plaintiff to a clinical psychologist, who conducted three counseling sessions. After September 2000, plaintiff relied on Dr. Russell for all treatment and prescriptions. Plaintiff's prescription medications include Ativan and Atarax for her affective and anxiety-related disorders, along with Amaryl and Glucophage for diabetes. She has taken other

antianxiety and antidepressant medication, such as Paxil, Buspar, and Prozac, with mixed results.

There are several mental status evaluations in the medical record: a report of an examination conducted by a clinical neuropsychologist and psychologist, Patricia Walz, Ph.D. on April 18, 2001; a mental residual functional capacity (RFC) assessment completed by Sally Varghese, M.D., on July 6, 2001; and a psychiatric review technique form completed by Bernard L. Pearce, Ph.D., on October 11, 2001. Additionally, Dr. Russell filled out a physical residual functional capacity evaluation on December 12, 2001, which included a statement that the number "of days missed from work and co-inciding [sic] office visits demonstrat[es] fear, anxiety, [and] loss of reality testing." R. at 234-36. He also observed that plaintiff had a "fear of job's socializing environment." *Id.* at 236.

The evaluators generally agree that plaintiff has dysthymia, panic disorder with mild agoraphobia, and a history of drug abuse. She has difficulty with calculations, concentrating, and social functioning, but is able to care for her personal needs (including blood-sugar monitoring). Dr. Walz was undecided about plaintiff's significant limitations of adaptive functioning, but Dr. Varghese concluded that plaintiff could adapt to a work situation as long as it did not include active involvement with the general public.

Concerning plaintiff's diabetes, the medical record shows fluctuating sugar levels, frequently related to stressors in her family life. Dr. Russell adjusted her medication when her levels were elevated. Plaintiff complained of numbness and burning on the bottoms of her feet, and Dr. Russell treated her with B-12 injections for mild diabetic sensory neuropathy. The injections slightly decreased the burning sensation.

Emad Al-Ghussain, M.D. performed a consultative medical examination on May 22, 2001. Dr. Al-Ghussain diagnosed diabetes with fair control, anxiety attacks, and excess weight. He opined that plaintiff could sit, stand, walk, lift, handle objects, hear, and travel. However, in a form completed on the day of the hearing, Dr. Russell stated that plaintiff was limited in the use of her feet for pushing and pulling leg controls and in the use of her hands for repetitive grasping and fingering.

At the hearing before the ALJ, plaintiff was represented by counsel. She testified that she was anxious around other people, had trouble concentrating and sleeping, and her feet and hands burn. Additionally, her hands had begun itching, a condition treated with medication that made her sleepy. Plaintiff stated that she could stand for a couple of hours at a time before she had burning in her feet. Plaintiff's mother also testified, saying that plaintiff simply wants to be alone and that she needs psychiatric treatment.

The ALJ asked a testifying vocational expert about unskilled jobs available for a claimant who "could do the demands of light work from an exertional standpoint," but "could not handle complex or detailed work tasks, and would be limited to simple one or two step jobs that did not involve interaction with public, and where she didn't have the requirement for much interaction with others." *Id.* at 63. The vocational expert testified that there were several such jobs available. However, if plaintiff could not use her hands or feet for repetitive motions, there would be no jobs she could perform.

In his decision, the ALJ found that plaintiff's diabetes and depression were severe impairments, but that she retained the residual functional capacity (RFC) to perform a wide range of light work. Her RFC excluded positions that required her to lift more than ten pounds frequently or twenty pounds occasionally, interact with the public, or perform more than a one or two-step operation. The ALJ determined that plaintiff could not do her past relevant work as electronics assembler, poultry dresser, or restaurant owner. However, she could perform jobs that exist in significant numbers in the national economy, such as production assembler, laundry sorter, and housekeeping cleaner.

Plaintiff appealed to the Appeals Council, and supplemented the record with an evaluation by Dr. Ben Cheek, who reached a RFC conclusion similar to

that of Dr. Russell.  On judicial review, a magistrate judge affirmed the Commissioner's decision.

## II.

Plaintiff raises four challenges on appeal:  (1) the ALJ did not fully and fairly develop the record; (2) the ALJ did not properly evaluate the credibility of plaintiff's subjective complaints; (3) the ALJ incorrectly assessed plaintiff's residual functional capacity; and (4) the ALJ incorrectly found that plaintiff can perform other jobs in the national economy.  Our review of the Commissioner's decision is limited to determining whether the correct legal standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole.  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

A.    Development of the administrative record

Plaintiff contends that the ALJ committed error by failing to obtain records from the psychiatrist and endocrinologist to whom she was referred by Dr. Russell and a mental health center that had evaluated her.  She also asserts that, "[t]o make the record absolutely complete, the Appeals Council should have obtained

-6-

[Dr. Cheek's] office notes of Dr. Cheek or engaged in further inquiry when they received his assessment." Aplt. Br. at 15.

The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs*., 13 F.3d 359, 360-61 (10th Cir. 1993). Generally, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). Nevertheless, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored" and "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

Plaintiff's counsel did not indicate or suggest to the ALJ that any medical records were missing, nor ask for the ALJ's assistance in obtaining any such records. The ALJ had before him Dr. Russell's records (referencing the

specialists), the records of plaintiff's psychologist, and also those of the consulting physicians. We conclude that there was an adequate record by which the ALJ could decide this case.

B.    Evaluation of plaintiff's subjective complaints

In her second argument, plaintiff takes issue with the ALJ's conclusion that plaintiff's allegations of subjective complaints were not fully credible. Plaintiff contends that the ALJ (1) overstated her ability to perform daily activities and her mental impairment and (2) improperly discounted Dr. Russell's opinion and her testimony about her difficulty standing and walking due to burning in her feet. She also suggests that the ALJ failed to consider other evidence crucial to a disability determination, such as her prior work record, her regular seeking of medical treatment, her compliance with doctor's orders, and the variety of medications she takes.

But the ALJ did not dispute the presence of her impairments nor did he fail to acknowledge that claimant is limited by them. The ALJ concluded that the claimed severity of plaintiff's limitations was inconsistent with the medical record and her own statements at the hearing. The ALJ's "[f]indings as to credibility [were] closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Plaintiff essentially disagrees with the weight the ALJ gave to various facts. Nevertheless, our review of the record reveals no reversible error in the ALJ's assessment of plaintiff's credibility.

C.     Assessment of plaintiff's RFC

Plaintiff's third issue relates primarily to the ALJ's failure to incorporate Dr. Russell's opinion about plaintiff's limited use of her hands and feet in the RFC determination. However, the ALJ noted that he rejected only the portions of Dr. Russell's opinion that were not supported by the other evidence. *See Castellano*, 26 F.3d at 1029. For instance, the ALJ referred to plaintiff's testimony that she could stand for a couple of hours before experiencing burning in her feet. Additionally, the RFC adequately accounted for plaintiff's mental impairments by limiting her RFC to work that does not require interaction with the public or more than a one to two step operation.

D.     Finding that plaintiff can perform other jobs in the national economy

Plaintiff's final contention is related to her RFC argument. She asserts that the ALJ's hypothetical question to the vocational expert was flawed because it did not include all the limitations found by Dr. Russell. The ALJ analyzed the

medical evidence and concluded that the evidence supported a finding that claimant could perform the requirements of light unskilled work, with restrictions on lifting, complexity of operation, and interaction with the public. The ALJ included these restrictions in his hypothetical question to the vocational expert. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (hypothetical questions to the vocational expert need only reflect impairments and limitations that are borne out by the evidentiary record). The vocational expert then identified jobs which plaintiff could perform.

The ALJ rejected Dr. Russell's assertion that she could not use her hands and feet for repetitive motions and, consequently, the ALJ was not required to accept the vocational expert's response to a hypothetical including this unsupported limitation. *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (stating that the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ). Again, we may not reweigh the evidence on appeal. *Casias*, 933 F.2d at 800. The vocational expert's testimony provided substantial evidence supporting the ALJ's denial of benefits.

III.

The ALJ's conclusion that plaintiff was not disabled was based on substantial evidence and arrived at by application of correct legal standards. **AFFIRMED** .

Entered for the Court


Stephen H. Anderson
Circuit Judge