Henrietta **JESSE**, Plaintiff,

v.

Jo Anne B. **BARNHART**, Commissioner of Social Security, Defendant.

No. 03–4147–JAR.

United States District Court, D. Kansas.

June 30, 2004.

---

Scott L. Johnson, Tilton & Tilton, Chtd., Topeka, KS, for Plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Henrietta Jesse brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. The Court reverses and remands because defendant failed to fully develop the record with rec-

ords and/or testimony of treating physician Dr. Bazzano. Although defendant did not err in its credibility determination, further development of the record through the evidence from Dr. Bazzano will require a reevaluation of credibility. Finally, irrespective of the failure to fully develop the record, defendant failed to properly determine plaintiff's residual functional capacity.

### I. Procedural Background

On January 5, 2001, plaintiff filed her application for a period of disability and disability insurance benefits. Plaintiff is insured for disability benefits through September 30, 2000, so she must establish disability on or prior to that date in order to be entitled to Title II benefits. On plaintiff's application she claimed disability since February 24, 1993, due to limitation of extension with shooting back pain and degenerative arthritis of the lumbar spine. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing on November 19, 2002, at which both plaintiff and her counsel were present. On February 5, 2003, the ALJ rendered a decision denying all benefits, on the basis that plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council; her request for review was denied on June 4, 2003. Thus, the ALJ's decision is the final decision of defendant.

### II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[1] The Tenth Circuit has defined

---

**1.** *See White v. Massanari,* 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v.* *Sec'y of Health & Human Services,* 26 F.3d 1027, 1029 (10th Cir.1994)).

"substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

### III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[4] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."[5]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[6] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[7] Step one determines whether the claimant is presently engaged in substantial gainful activity.[8] If she is, disability benefits are denied.[9] If she is not, the decision maker must proceed to the second step.[10] Here, the ALJ determined that although plaintiff was engaged in part time work after her alleged onset date, she was not engaged in substantial gainful activity and, thus, the ALJ properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[11] This determination is governed by certain "severity regulations," is based on medical factors alone, and consequently, does not include consideration of such vocational factors as age, education, and work experience.[12] Pursuant to the severity regulations, the claimant must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities.[13] If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.[14] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision

---

2. *Id.* (quoting *Castellano*, 26 F.3d at 1028).

3. *Id.*

4. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

5. *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

6. *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

12. *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

13. *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

14. *Id.* at 751.

maker proceeds to step three.[15] The ALJ in this case concluded that plaintiff satisfied the severity requirement because of degenerative lumbar disc disease with narrowing of L5–S1 space. He found her hypertension was not severe as it was well controlled by medication. He found her anxiety was mild and did not meet the requirement of being expected to last for over 12 months. Thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[16] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[17] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work [she] has performed in the past."[18] If the claimant is able to perform her previous work, she is not disabled.[19] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. At the fourth step, the ALJ concluded that plaintiff was able to perform her past relevant work as a truck driver as generally performed in the national economy at the light exertional level. Thus, the ALJ did not proceed to the fifth and final step of the sequential evaluation process-determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of [her] age, education, and work experience."[20]

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, plaintiff contends that the ALJ made the following three errors in reaching his decision: he failed to fully develop the record; he erred in finding plaintiff's testimony not credible; and he failed to properly assess plaintiff's RFC. The Court addresses each of these arguments in turn.

### A. ALJ's Duty to Develop the Record

▮ Plaintiff asserts that the ALJ erred by failing to comply with his duty to ensure that an "adequate record is developed during the disability hearing consistent with the issues raised."[21] Plaintiff bears the burden of proving disability prior to the expiration of her insured status, and to meet this burden, plaintiff must provide the ALJ with evidence of the existence of a disability.[22] However, these disability hearings are non-adversarial, and the ALJ bears responsibility for deter-

15. *Id.*

16. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287).

17. *Id.*

18. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287).

19. *Id.*

20. *See id.* (quoting *Bowen v. Yuckert*, 482 U.S. at 142, 107 S.Ct. 2287).

21. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997) (citing *Henrie v. U.S. Dept. of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993); 20 C.F.R. § 404.944); *see also Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

22. *Arteaga v. Barnhart*, 99 Fed.Appx. 852, 856, 2004 WL 1127191, *3 (10th Cir.2004) (citing *Bowen v. Yuckert*, 482 U.S. at 146, 107 S.Ct. 2287).

mining that the record is adequately developed.[23] Generally, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."[24] This duty applies even where, as here, plaintiff is represented by counsel.[25]

Plaintiff believes the ALJ failed to develop the record in not subpoenaing one of plaintiff's treating physicians, Dr. Bazzano, to testify at the hearing. The regulations provide that "[w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses . . . ."[26] In making a request, a party must submit a written request to the ALJ stating the important facts the witness is expected to prove and indicating why the facts cannot be proven without the subpoena.[27] On October 29, 2002, Plaintiff's counsel wrote a letter to the ALJ requesting that he subpoena Dr. Bazzano to testify at the November 19 hearing, because plaintiff had been unable to obtain all of Dr. Bazzano's treatment records, and further advising that Dr. Bazzano had treated plaintiff before and after the accident that she claims caused her disability. Later, plaintiff's counsel advised that plaintiff had been told that Dr. Bazzano's records had been destroyed and were not available.

Inexplicably, the ALJ did not subpoena Dr. Bazzano, a physician who treated plaintiff during a relevant time period. Although the ALJ's opinion refers to certain records of Dr. Bazzono, it is not apparent from the face of some records that they are in fact the records of Dr. Bazzano. Moreover, it appears that the ALJ failed to either obtain the full records, or honor plaintiff's request that Dr. Bazzano testify. This evidence might have materially affected the ALJ's finding that plaintiff's impairments were not as severe as alleged, because she did not receive treatment for her pain between 1993 and 2000. The ALJ did consider that plaintiff underwent chiropractic treatment after 1993. But, according to plaintiff, Dr. Bazzano would testify that he was a medical doctor who treated her with chiropractic manipulation; and Plaintiff seems to allude that Dr. Bazzano also gave her other treatments for pain during the relevant time. Thus, it was an abuse of discretion for the ALJ to fail to develop the record by not subpoenaing Dr. Bazzano to testify at the hearing.[28]

### B. Assessment of Plaintiff's Credibility

 Plaintiff asserts that the ALJ erred in failing to properly assess her credibility in accordance with the Tenth Circuit's opinion in *Luna v. Bowen.*[29] Under *Luna*, the ALJ must decide whether a claimant's subjective complaints are credible, considering all the evidence presented, including medical data, objective indications of the degree of symptoms, and subjective accounts of the severity of symptoms by the claimant.[30] The ALJ must

---

**23.** *Id.* (citing *Henrie,* 13 F.3d at 360–61).

**24.** *Id.* (citing *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir.1996)).

**25.** *Graham v. Apfel,* 149 F.3d 1190, 1998 WL 321215, *1 (10th Cir.1998) (citing *Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 480 (10th Cir.1993)). Pursuant to 10th Cir. Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

**26.** 20 C.F.R. § 404.950(d)(1); *see also Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir.1994).

**27.** 20 C.F.R. § 404.950(d)(2).

**28.** *See Glenn,* 21 F.3d at 988 (stating the abuse of discretion standard for the ALJ's decision not to subpoena a witness at a social security disability hearing).

**29.** 834 F.2d 161 (10th Cir.1987).

**30.** *Id.* at 163.

also consider such factors as: a claimant's persistent attempts to find relief and her willingness to try any treatment prescribed; whether claimant has regular contact with a doctor; claimant's daily activities; the dosage, effectiveness, and side effects of claimant's medication; and subjective measures of credibility that are peculiarly within the judgment of the ALJ.[31] Moreover, the ALJ must give specific reasons why he rejects a claimant's subjective complaints.[32] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[33]

A review of the ALJ's decision in this case reveals that he complied with *Luna* in assessing plaintiff's credibility. The ALJ's assessment was based on several specific factors including the medical evidence, the inconsistencies in plaintiff's own testimony regarding her ability to work and her daily activities, plaintiff's work activity after her alleged onset date, and lapses in plaintiff's medical treatment. Plaintiff has not shown how this assessment was in error.

The ALJ mentioned that plaintiff had a sporadic work history prior to a period of stable and increasing earnings from 1987–1992. Plaintiff argues that it was improper for the ALJ to make this observation because plaintiff had only one year with no earnings in the prior 25 years.[34] However, it does not appear that the ALJ found this weighed against plaintiff's credibility, so it was not erroneous for him to mention it.

■ The ALJ did rely on plaintiff's more recent work history as evidence weighing against her credibility, including the fact that plaintiff worked part time jobs subsequent to her alleged onset date. Plaintiff takes issue with this factor because none of the work was substantial gainful activity. Also, she argues that some of the wages she received after her alleged onset date were from riding with her husband when he went on long, over the road trucking jobs, and that in order to ride with him she was required to be paid some of her husband's paycheck so she would be covered by the trucking company's workers compensation insurance. She testified that she was able to make such trips because she could stand or lay down in the truck. Although plaintiff correctly argues that her desire to work should not be used as a negative credibility factor,[35] here plaintiff actually worked; when work is not substantial gainful employment, the ALJ can consider this a factor in his determination of credibility.[36]

Further, the ALJ noted that plaintiff "acknowledged she was capable of independently performing a wide range of daily activities such as household chores, shopping, running errands, driving an automobile, driving a tractor-trailer truck, accompanying and assisting her husband on extended 10–day driving jobs, and swimming," which the ALJ believed detracted from her general credibility. Plaintiff argues that this was an improper

31. *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir.2000) (citing *Luna*, 834 F.2d at 165–66); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

32. *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir.2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir.1995)).

33. *Id.* (citing *Kepler*, 68 F.3d at 390–91).

34. *See Falk v. Comm'r of Soc. Sec. Adm.*, 282 F.Supp.2d 1206, 1218 (D.Kan.2003) (holding it was inaccurate for the ALJ to describe plaintiff's work history as sporadic during credibility analysis when claimant had only one year with no earnings).

35. *Biri v. Apfel*, 4 F.Supp.2d 1276, 1279 (D.Kan.1998) (citing *Cavitt v. Schweiker*, 704 F.2d 1193, 1195 (10th Cir.1983)).

36. *Williams v. Chater*, 923 F.Supp. 1373, 1379 (D.Kan.1996) (citing 20 C.F.R. §§ 404.1571, 416.971).

characterization of her activities because she does her household chores slowly and it hurts her to mop the floor, vacuum, and sweep; and she shops four times a month, but needs help carrying groceries. Plaintiff also takes issue with the ALJ's statement that she runs errands because the ALJ did not specify what errands he was referring to, and he gave no detail as to the duration and frequency of the errands. Finally plaintiff asserts that the ALJ's reliance on her "swimming" is improper because she was actually doing exercises like what she had done in therapy. Yet in a June 28, 1993 treatment note, Dr. Chan wrote that plaintiff "has tried to be active and has been swimming." Overall plaintiff's activities seem inconsistent with her alleged disability. The ALJ did not believe plaintiff was without pain, only that her pain was not as severe as alleged. When considered together and in light of the other evidence in this case, it was not improper for the ALJ to rely on these activities as weighing against plaintiff's credibility.[37]

The ALJ also relied on the fact that plaintiff complained of a frequent need to lie down and inability to tolerate prolonged positioning, yet she never complained about these limitations to her physicians. In contrast, the ALJ noted that plaintiff told Dr. Chan that she was able to sit for two hours at a time and walk for one mile at a time; she told Dr. Harrison that she experienced only intermittent pain since 1993; and she told Dr. Yost that she continued her own exercise regimen. Plaintiff points out that Dr. Chan's July 20, 1993 report states, "Sometimes her back pain would be so severe that she has to lie down." And, plaintiff argues that it is improper for the ALJ to rely on a lack of activities of daily living being recorded in a physician's report. As the Tenth Circuit noted:

> [T]he fact that the physician does not note that his patient reports lying down frequently is not indicative of the patient's later veracity at a hearing. A patient generally will report pain levels and activities that increase that pain. The physician will report objective medical findings identifying the source of the pain. His failure to report the patient's activities of daily living cannot be held against the patient if objective medical findings support the patient's testimony.[38]

So the inquiry here should be whether the objective medical findings support plaintiff's testimony that she needed to lie down and could not tolerate prolonged positioning, not whether it was recorded in plaintiff's medical records that she told her doctor of such need. Because there was evidence in the record that plaintiff told at least one doctor that she needed to lie down, and because whether it is in the doctor's report or not is not sufficient evidence of whether plaintiff really had such a need, the ALJ should not have used this factor in his credibility analysis. However, even when removing this factor, the ALJ still had substantial evidence for his credibility determination.

■ The ALJ also relied on the medical evidence in this case. He found that the medical evidence provided by plaintiff's physicians did not correspond with the degree of pain in which plaintiff claimed to be. Of course, this finding did not include all evidence from one treating physician, Dr. Bazzano. The ALJ relied on the evi-

---

**37.** *See Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir.1988).

**38.** *Hinton v. Massanari,* No. 00–3408, 13 Fed. Appx. 819, 823, 2001 WL 744971, *4 (10th Cir.2001). Pursuant to 10th Cir. Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

dence that "although severe narrowing [of the L5–S1 disc interspace] was opined, there was no clinical evidence or diagnosis of nerve root impingement." Plaintiff argues that the ALJ failed to explain the relevancy of nerve root impingement. But the ALJ was properly addressing whether the severe narrowing of the disc interspace met a listed impairment, in light of no diagnosis of nerve root impingement.[39] Finding that the impairment did not meet this listing, the ALJ nevertheless considered, in determining plaintiff's credibility, that the severe narrowing of the disc interspace could reasonably be expected to cause some pain. This determination was not in error. Of course, the development of evidence from Dr. Bazzano might change the ALJ's ultimate determination of credibility.

The ALJ further determined in accordance with the test in *Luna*, that plaintiff's lack of persistent attempts to find relief weighed against her credibility. The ALJ found that plaintiff only took Tylenol but no prescription pain medication, and received chiropractic adjustments occasionally, about every three months. Of course, development of the record through the records and/or testimony of Dr. Bazzano, may or may not reveal that plaintiff made other attempts at seeking relief for her pain.

The Court notes, however, that the ALJ is not required to apply the test of *Frey v. Bowen*[40] in making this determination, as plaintiff urges. The *Luna* test's factor, lack of persistent attempts to find relief, is not synonymous with the *Frey* factor of failure to follow prescribed treatment. Typically a person who fails to seek relief, has not been prescribed a treatment, medication or regimen, for they have not seen a medical practitioner who could prescribe such relief. In determining credibility under *Luna*, the ALJ considers, *inter alia*, whether the claimant made attempts to get relief; such attempts might include seeking treatment and relief prescribed by a medical practitioner. Under the *Frey* test, however, in either evaluating claimant's credibility or in determining whether to deny benefits, the ALJ considers whether claimant failed to follow specific prescribed treatment.

It is axiomatic that the *Frey* test does not apply to the issue of failure to seek relief, for the *Frey* test requires the ALJ to determine: "(1) whether **the treatment at issue** would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."[41] Failure to seek relief does not concern plaintiff's compliance with a specific or particular treatment, but considers what attempts plaintiff made to get relief. The Tenth Circuit made clear in *Qualls v. Apfel*[42] that the *Frey* test is not required in a situation when the treatment has not been prescribed and the ALJ is simply considering "what attempts plaintiff made to relieve his pain-including whether he took pain medication-in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling."[43]

---

**39.** *See* Appendix 1 to Subpart P of Part 404– Listing of Impairments § 1.04.

**40.** 816 F.2d 508, 517 (10th Cir.1987).

**41.** *Frey*, 816 F.2d at 517 (citing *Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir.1986); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985); 20 C.F.R. 404.1530) (emphasis added).

**42.** 206 F.3d 1368, 1372 (10th Cir.2000).

**43.** *Qualls*, 206 F.3d at 1372 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991); *Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir.1987)); *see also Allen v. Apfel*, 216 F.3d 1086, 2000 WL 796081 (10th Cir.2000); *Noble v. Callahan*, 978 F.Supp. 980, 986 (D.Kan.1997); *Bates v. Barnhart*, 222 F.Supp.2d 1252, 1261 (D.Kan.2002).

Thus, the ALJ did not err; he did not need to apply the *Frey* test under these circumstances. If further development of the record, with the records and/or testimony of Dr. Bazzano, reveals that Dr. Bazzano prescribed a specific treatment or medication, then the *Frey* test should be employed.

Plaintiff also argues that relying on her lack of treatment was erroneous because she was told there was nothing that could be done for her condition. Plaintiff is referring to Dr. Chan's July 27, 1993, treatment note, which indicates that her improvement had reached a plateau and that he told plaintiff that she "has not been able to [sic] or benefited [sic] from conservative treatment" and he felt that she had reached "maximal medical benefit." However, on June 29, 1993, Dr. Chan saw plaintiff, and noted that she was able to return to light work with the restriction of no lifting over twenty pounds, while also noting that he thought plaintiff would also benefit from physical therapy and possibly a work hardening program. Dr. Chan's records indicate that he believed plaintiff was able to perform light work, but that nothing more could be done to enable plaintiff to work at a higher exertional level. Moreover, Dr. Chan's records indicate that plaintiff chose not to participate in physical therapy, and quit the work hardening program because it caused, not relieved her pain. Although the ALJ did not evaluate this under the *Frey* test, Dr. Chan's opinion was that plaintiff could return to light work, even though she had

not yet tried physical therapy or work hardening.

## C. Function–by–Function Analysis of RFC

■ Plaintiff argues that the ALJ erred in analyzing her RFC. In determining plaintiff's RFC, the ALJ found plaintiff was "limited to light, non-physically stressful job tasks and cannot tolerate extremes of cold or vibration." Plaintiff argues that the ALJ failed to follow Social Security Ruling (SSR) 96–8p, which requires the ALJ to first list plaintiff's abilities according to a function-by-function analysis set out in 20 C.F.R. § 404.1545(b), (c), and (d). This requires separate consideration "of seven strength demands: i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling."[44] This evaluation is even more important in this case because the ALJ found plaintiff could return to her past work.[45] At step four, "RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' [or] 'light'... work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."[46] An ALJ's failure to first make a function-by-function analysis of plaintiff's limitations or restrictions could result in the ALJ overlooking some of plaintiff's limitations or restrictions.[47]

The ALJ did not properly consider plaintiff's abilities in a function-by-function analysis before stating the exertional level at which he believed plaintiff could perform. The ALJ did specifically note that

44. Soc. Sec. Rul. 96–8p, 1996 WL 374184, *5.

45. *See Fergueson v. Barnhart,* 52 Fed.Appx. 112, 114, 2002 WL 31667969, *2 (10th Cir. 2002) (finding that the ALJ's RFC determination should have been more detailed at step four but was not a reversible error because the ALJ found that plaintiff could not return to her past relevant work, and at step five the

ALJ only needs to express the RFC in terms of exertional categories.) Pursuant to 10th Cir. Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

46. Soc. Sec. Rul. 96–8p, 1996 WL 374184, *3.

47. *Id.* at *4.

plaintiff had two nonexertional limitations: not being able to tolerate extremes of cold and vibration. The ALJ also adopted the opinion of treating physician Dr. Chan, that plaintiff was limited to carrying no more than 20 pounds. The ALJ noted, before finding plaintiff's complaints not fully credible, that plaintiff stated she could not lift over 20 pounds, and that she could sit for two hours and walk one mile. The ALJ accepted Dr. Yost's opinion that plaintiff would not be able to do manual labor; and he accepted the State agency non-examining physician's RFC assessment that plaintiff was limited to light work activity and lifting no more than 20 pounds.

However, the ALJ never made a specific finding, pursuant to SSR 96–8p, regarding plaintiff's ability to stand, carry, push or pull. And it is unclear what his determination was of plaintiff's ability to sit throughout an 8–hour day. The ALJ did not list any evidence regarding plaintiff's ability to sit or stand, other than plaintiff's incredibility and the physicians' opinions. Dr. Chan did not state what functional abilities plaintiff was capable of performing when he determined that she could do light work. Likewise, Dr. Yost did not state what abilities he was restricting when he determined plaintiff should not do manual labor. And the ALJ merely mentioned that the State agency physician's RFC assessment agreed with Dr. Chan. The ALJ made no finding as to plaintiff's

capability for the prolonged sitting or standing required for the light work of her previous position as a truck driver.[48] Consequently the ALJ's RFC analysis is not supported by substantial evidence and must be remanded for a proper RFC determination before deciding whether plaintiff is disabled at steps four or five.[49]

## V. Conclusion

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

> Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of plaintiff's impairments, in accordance with the statute and regulations. Because the ALJ failed to fully develop the record with records and/or testimony of treating physician Dr. Bazzano, he must do so on remand. The ALJ will reassess plaintiff's credibility upon receiving the records/testimony of Dr. Bazzano. Finally, the ALJ must make a function-by-function analysis of plaintiff's RFC on the complete record and then determine whether she is able to perform her past relevant work or other jobs in the national economy.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision

---

**48.** 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine

that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

**49.** *See Alexander v. Barnhart,* 74 Fed.Appx. 23, 28, 2003 WL 22087496, *5 (10th Cir.2003) (finding the ALJ's RFC determination not supported by substantial evidence where the ALJ failed to make a proper function-by-function analysis). Pursuant to 10th Cir. Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

denying plaintiff disability benefits is **RE-VERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**